931 So.2d 387 (2006)
Ralph SLAUGHTER, Secretary of the Department of Revenue and Taxation
v.
ARCO CHEMICAL COMPANY.
No. 2005-CA-0657.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 2006.
*389 John J. Weiler, Paul Damian Rees, John J. Steger IV, Weiler & Rees, LLC, Mandeville, Counsel for Plaintiff/Appellant.
Robert W. Nuzum, Baker Donelson Bearman Caldwell & Berkowitz, PC, New Orleans, Counsel for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge MAX N. TOBIAS Jr.)
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiff-appellant, Ralph Slaughter, Secretary of the Department of Revenue and Taxation, State of Louisiana (hereinafter referred to as "the State"), appeals a judgment in favor of the defendant-appellee, ARCO Chemical Company[1], dismissing the State's claim for attorney's fees on the grounds of abandonment for three years non-prosecution. We affirm.
On December 23, 1994, the State filed a petition to collect taxes in the sum of $399,846.28, together with interest, against ARCO, alleging that ARCO owed corporate income taxes for 1987-1990 and corporate franchise taxes for the years 1988-1991. On February 29, 1996, ARCO filed an answer denying any tax liability and claiming entitlement to a refund. The State asks for attorney's fees only on this appeal, taking the position that the underlying tax issues have been resolved to its satisfaction.
The State in its brief concedes that the case was abandoned for three years non-prosecution:
[A]s of October 11, 2002, the action was abandoned by operation of law. See La.Code Civ. Proc. art. 561. [Emphasis added.]
However, the State argues that subsequent to the expiration of the three-year period:
... ARCO settled the principal action on October 10, 2003, almost one year after the case was abandoned, ARCO acknowledged the action, waived its right to plead abandonment, and the abandonment period began to run anew.
Here the State is referring to the fact that almost a year after the three-year *390 abandonment period had run, it sent ARCO a check dated "10/10/03" in the amount of $152,094.26, along with a cover letter and annexed schedule. The State contends that ARCO's negotiation of the check dated 10/10/03 constituted a settlement, acknowledgment and waiver of ARCO's right to plead the previously accrued abandonment, thereby starting the three-year period running anew.
Incorporated into the letter by reference was an annexed schedule showing, according to the State's calculations, that ARCO had overpaid its taxes in some years and underpaid in others, but that the bottom line net effect was that when the referenced years were aggregated it was determined that ARCO overpaid by $152,094.26. The cover letter references corporation income tax for the period "December 31, 1987 through December 31, 1997" and corporation franchise tax for the period "December 31, 1988 through December 31, 1999." Thus, the letter and check encompassed more than twice as many years as were involved in this litigation.
However, the State alleges that, according to the schedule annexed to the letter, if only the years that were the subject of this litigation were considered, there would be a net amount due to the State and that, therefore, ARCO by negotiating the check from the State, was somehow making a payment to the State for those years. The State expresses this argument in its Reply Brief in the following manner:
[ARCO's] payment of the additional taxes via the settlement check # 003407 dated October, 10, 2003, or, as [ARCO] prefers to refer to it, the refund check[2], constituted an acknowledgement that was sufficient to interrupt not only the abandonment period, but prescription.
Based on this reasoning, when the State sent ARCO the check for $152,094.26, it somehow constituted a payment from ARCO to the State rather than the other way around. From this the State concludes that pursuant to La. R.S. 47:1512 it is entitled to collect attorney's fees on the net amount allegedly "paid" by ARCO, which fails to take into account the fact that the State paid ARCO a substantial refund based on the State's own calculations; or as the trial court characterized the State's position on the merits:
THE COURT:
.... All I'm saying is, the basis for coming in here, the statute says when you owe me taxes, I've got a right to collect attorney's fees because I had to go hire somebody....
And I'm saying to you, I don't think you are owed any attorney's fees unless you can show me that they owed you any money when you did the audit.
Your department does the audit and comes up, and you take the money that they pay and you go give them some money back.
The trial court took the very reasonable position that no attorney's fees are due the State when it sends the taxpayer, in this case ARCO, a refund in recognition of the fact that the taxpayer has overpaid its taxes.
But the State also contends that ARCO's negotiation of the check constituted a settlement of this litigation. This in turn constituted a step in the prosecution of the case and, therefore, an acknowledgement of the action, thereby resurrecting the previously abandoned suit and starting the three-year period anew. In spite of the fact that the three-year period of abandonment under La. C.C.P. art. 561 is effective without formality, in effect, *391 self-operative[3], the jurisprudence allows for the waiver of an abandonment already accrued under certain circumstances. "Unlike a plaintiff whose post-abandonment actions cannot serve to revive an abandoned action, a defendant's post-abandonment actions can serve to waive his right to plead abandonment." Clark v. State Farm Mut. Auto. Ins. Co., 00-3010, p. 15 (La.5/15/01), 785 So.2d 779, 789.
Both parties make numerous references to Clark in their briefs. The Supreme Court in Clark explained that "abandonment" is a prescription based concept:
Historical Background of AbandonmentStep in the Defense and Waiver
Abandonment is both historically and theoretically a form of liberative prescription that exists independent from the prescription that governs the underlying substantive claim. Given its historical roots, abandonment unsurprisingly has been construed as subject to prescription-based exceptions, one of which is the waiver exception based on acknowledgment.
Insofar as Article 561 recognized that a step made by the defendant in defense of the action results in an interruption of abandonment, it changed the prior law. The prior law addressed directly only a plaintiff's step in the prosecution; a defendant's step in the defense was addressed indirectly through the jurisprudential waiver exception.
The prior law of abandonment was found in La. C.C. art. 3519 (1870), which was located in the section of the code addressing causes which interrupt prescription; it read:
If the plaintiff in this case, after having made his demand, abandons, voluntarily dismisses, or fails to prosecute it at the trial, the interruption is considered as having never happened.
Whenever the plaintiff having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same. La. C.C. art. 3519 (1870)(as amended by Acts 1898, No. 107) (emphasis supplied). Significantly, the prescription concept of acknowledgment, which formed the basis for the waiver exception to abandonment, was set forth in the article following abandonment, La. C.C. art. 3520 (1870), which read: "[p]rescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."
In 1960, the procedural rules were removed from the Civil Code and transferred to the Code of Civil Procedure; former C.C. art. 3519 was transferred to La. C. Civ. P. art. 561. As to the waiver exception, Article 561 differed from former C.C. art. 3519 in two respects: (1) it expressly declared that abandonment is self-operative; and (2) it provided "that a failure by the parties to take any steps in the prosecution or defense of the suit leads to abandonment," and thus made no distinction as to which party must take a step. Chevron Oil Co. v. Traigle, 436 So.2d 530, 533 (La.1983). The latter change was construed as codifying the defense-oriented waiver exception as a step in the defense. Melancon v. Continental Casualty Co., 307 So.2d 308, 312 (La.1975).
Clark, supra, pp. 11-13, 785 So.2d at 787-788.
The thrust of this discussion in Clark is that abandonment is a form of *392 liberative prescription and as such it may be waived on the grounds of acknowledgement. The Clark court emphasized the prescription nature of abandonment by referring to it again later in the opinion:
The historical and theoretical nature of abandonment as a species of prescription renders it appropriate to consider prescriptive principles in analyzing res nova abandonment issues....
Id., p. 19, 785 So.2d at 791.
The defendant's acknowledgement in Clark was a pre-abandonment acknowledgement, but the Clark opinion contains strong dicta that an acknowledgement by the defendant which occurs after the running of the three-year period will revive the claim. This Court notes that if abandonment is truly a species of prescription, then the analogy does not apply to post-abandonment revival, as what little jurisprudence there is indicates that acknowledgement must occur prior to the running of the prescription in order to interrupt it. Burdin v. Burdin, 171 La. 7, 129 So. 651 (1930); Succession of Slaughter, 108 La. 492, 32 So. 379 (1902); Goss v. Goss, 95-1406, p. 4 (La.App. 3 Cir. 5/8/96), 673 So.2d 1366; Beatty v. Vining, 147 So.2d 37 (La. App. 2 Cir.1962).
Thus, where prescription is concerned, timing is critical. There is a vast difference between what will start the prescriptive period running anew depending on whether the actions of the debtor occur before or after the prescriptive period has run.
In Burdin v. Burdin, supra, the Supreme Court made it clear that a mere acknowledgement will not suffice to revive a prescribed claim:
It is not necessary for us to decide whether an acknowledgment of a debt so as to renounce an acquired prescription can be made to a third person out of the presence of the creditor, because a mere acknowledgment is not sufficient for the purpose, even if accompanied by payment on account of the debt. There must be a new promise made to pay the debt in order to nullify an accrued prescription. Succession of Slaughter, 108 La. 492, 32 So. 379, 58 L.R.A. 408; Weil v. Jacobs' Estate, 111 La. 357, 35 So. 599; Manders v. Irwin, 118 La. 1048, 43 So. 698. See, also, Civ.Code, art. 2278, par. 4 (as amended by Act No. 121 of 1886, p. 219). A mere inspection of defendant's letter, the language of which we have hereinabove quoted, discloses that no promise whatever was made by the writer to pay the debt due plaintiff.
Id., 129 So. at 655.
After a claim has prescribed, one may acknowledge a debt, and even pay part of it, without renouncing the prescription acquired on it. Succession of Slaughter, 108 La. 492, 32 So. 379 (La.1902). The Supreme Court explained in Lima v. Schmidt, 595 So.2d 624, 631-632 (La.1992), that once prescription has run acknowledgment is no longer applicable; the applicable doctrine is then "renunciation":
Acknowledgment and renunciation differ in both substance and legal effect. Substantively, acknowledgment is the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course; renunciation is the technical term designating the abandonment of rights derived from prescription that has accrued. Official Comment (c) to LSA-C.C. Art. 3449; Comment, Interruption of Prescription by Acknowledgment in Louisiana, 14 Tul.L.Rev. 430 (1940). In legal effect, acknowledgment interrupts prescription and erases the time that has accrued, with prescription *393 recommencing anew from the date of interruption; renunciation obliterates the effect of prescription that has run. Because of these differences, renunciation is subject to more stringent requirements than acknowledgment. Comment, Prescription and PeremptionThe 1982 Revision of the Louisiana Civil Code, 58 Tul.L.Rev. 593, 611 (1983).
Our courts have consistently held that renunciation must be "clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run." Queen v. W. & W. Clarklift, Inc., 537 So.2d 1214 (La.App. 4th Cir.1989); Bordelon's, Inc. v. Littell, 490 So.2d 779 (La.App. 3rd Cir.1986); McPherson v. Roy, 390 So.2d 543 (La. App. 3rd Cir.1980), writ denied, 396 So.2d 910 (La.1981). According to civil tradition, renunciation is a unilateral act requiring neither acceptance by the other party, nor requiring any formality. Official Comment (d) to LSA-C.C. Art. 3449. According to the Louisiana jurisprudence, renunciation requires a new promise to pay the debt, as "[a] new obligation binding on the debtor is created when a promise to pay is made after prescription has accrued." Bordelon, 490 So.2d at 781. By "promise" here is meant a "`pledge to another to do or not to do something specified; narrowly, a declaration which gives to the person to whom it is made the right to expect or to claim the performance or forbearance of a specified act.'" Id. (quoting Succession of Aurianne, 219 La. 701, 53 So.2d 901 (1951)).
As indicated above, a lesser showing is required to establish an acknowledgment.
Id., 595 So.2d 624, 631-632 (La.1992).
Thus, if we were to treat abandonment as a form of prescription, then we must consider "renunciation" to be the truly correlative analogous concept. Renunciation requires a much higher standard than that of mere acknowledgement. A renunciation of prescription is an abandonment of the right derived from prescription that has accrued and is subject to stringent proof requirements. Bridges v. X Communications, Inc., 03-441, p. 11 (La.App. 5 Cir. 11/12/03), 861 So.2d 592, 599, citing Lima, supra. As far back as 1845, the Supreme Court explained in Courtebray v. Rils, 9 Rob. 511 (La.1845), that renunciation of a prescription already accrued, being in the nature of the renewal of an obligation, must be specifically proven, and although it may be made tacitly, it must result from a fact which gives a presumption of the relinquishment of the right acquired by prescription ... and such fact must be necessarily and strongly connected with the debt which the party intended to revive. Geiger v. State ex rel. Dept. of Health and Hosp., 01-2206, p. 10 (La.4/12/02), 815 So.2d 80, 86.
Even if we were, for purposes of argument only, to find that the check and cover letter constituted an acknowledgement by ARCO, the facts still fail to meet the higher standard required for "renunciation," as there is no language in either the check or the cover letter that could be construed as a new promise to pay by ARCO or a new promise to litigate. In fact, none of the language in either the check or cover letter comes from ARCO  it all comes from the State.
This stands in stark contrast to the pronouncements in Clark concerning abandonment, which favor the State's position by implicitly deviating from the view that abandonment is a form of prescription. Whereas Clark begins its analysis by positing that abandonment is "both historically and theoretically a form of liberative *394 prescription[4]," it seems to shift later in the opinion to the position (contrary to the principles of prescription) that, for purposes of abandonment, the timing of the acknowledgement is irrelevant:
The timing of a defendant's conduct cannot logically be construed as altering its character insofar as whether it is sufficient to constitute a waiver of the right to plead abandonment. Logic dictates that the same standard for determining if action of the defendant results in waiver and thereby an interruption of abandonment should apply regardless of whether the conduct occurred before or after the abandonment period elapsed.
Id., p. 15, 785 So.2d at 789.
Following this reasoning, a mere acknowledgement post-abandonment would be sufficient to revive the State's claim, in spite of the fact that the jurisprudence is clear that the same would not be true were the issue one of liberative prescription. Therefore, we will examine in greater depth the State's contention that ARCO agreed to a settlement constituting an acknowledgement.
The State contends that the letter and check negotiated by ARCO constitute more than a mere acknowledgement, arguing that the documents constitute a settlement with an admission of liability which in turn constitutes an acknowledgement sufficient to revive a claim already abandoned, citing Crain v. Pletka, pp. 6-7 (La.App. 2 Cir. 1/23/02), 806 So.2d 950, 954. However, the facts and documentation in Crain bear no resemblance to those of the instant case. Furthermore, the Crain court held that there was no acknowledgement, only an unaccepted offer of settlement. In any event, we share the trial court's view that ARCO can hardly be said to have acknowledged a debt to the State merely by having accepted a check from the State.
The check was accompanied by a cover letter signed by Terri DuCote, Tax Audit Specialist, and approved by Deborah Underwood, Assistant Director of the Louisiana Department of Revenue. There is no language on the check indicating that it is intended as a settlement. There is no reference in the cover letter or on the check to this litigation. There is no release language in either the letter or the check.
We note that the letter and the check in the instant case contrast markedly with the letter and check found by this Court to constitute a settlement in Pierre v. Bank, 00-2729 (La.App. 4 Cir. 11/21/01), 801 So.2d 1213.
In Pierre the defendants sent the plaintiff a letter that stated their desire to "settle all liabilities"[5] and further requested a "release of further liability."[6] The check contained the notation, "Full release...."[7] In holding that the combination of the letter and check in Pierre constituted a settlement, this Court stated that:
The language of the letter sent by [the defendants] clearly explains their intent to settle with Ms. Pierre. The letter preceded and made clear the purpose for which the check was tendered, i.e. to pay the contractors and suppliers as well as make restitution to Ms. Pierre. On the face of the check were written the words "full release for work..." Thus, the object of the contract was to settle.
Id., 00-2729, p. 5, 802 So.2d at 1216.
There was nothing in either the letter or the check from the State in the instant *395 case containing any of the operative terms (or their equivalents) such as "settle" or "settlement," "release," "compromise," "payment in full," etc.
If we assume, for purposes of argument only, that the letter and check were somehow intended as a settlement or compromise, it is still impossible to determine what the parties intended to settle and compromise. Therefore, it would not be a valid settlement:
However, "[t]ransactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them." La. Civ.Code Ann. art. 3073 (emphasis added)[8]. In determining the parties' intent, the court generally may not consider extrinsic evidence, but must look only to the four comers of the agreement. La. Civ.Code Ann. art. 1848; Fascio v. Lee, 94-1149, p. 3 (La.App. 4th Cir.2/23/95), 650 So.2d 1236, 1237-38. Thus, compromise agreements extend only to those matters which the parties expressly intend to settle[9]. Condoll v. Johns-Manville Sale Corp., 448 So.2d 169 (La.App. 5th Cir.1984).
Landrum v. Board of Com'rs of the Orleans Levee Dist., 95-1591, pp. 5-6 (La. App. 4 Cir. 11/27/96), 685 So.2d 382, 388.
Thus, if we accept, for purposes of argument, the State's contention that the letter and check constitute a settlement in spite of the absence any language to that effect, then the most reasonable thing to do would be to also assume that the settlement was intended to be a settlement in full which would in turn include the claim the State now makes for attorney's fees.
The cover letter states that:
Enclosed is your client's refund check in the amount of $152,094.26 for the income and franchise tax periods listed above....
This amount is the result of a field audit examination and revisions to the field audit examination performed by the Tax Audit Specialist. Should you have any questions concerning this matter, please do not hesitate to call.
Whether one refers to it as "transaction," "compromise" or "settlement" the agreement must be in writing or "recited in open court and capable of being transcribed from the record of the proceeding." La. C.C. art. 3071. The State does not contend that the settlement was recited in open court. Its only basis for arguing that a settlement exists is the above mentioned cover letter and check.
The cover letter indicates only that the State determined that money was due ARCO and, therefore, remitted that amount. The acceptance of a payment is not sufficient to constitute a settlement. A settlement and a payment are two distinct things. Compton v. St. Paul Fire & Marine Ins. Co., 01-386, p. 4 (La.App. 3 Cir. 10/3/01), 796 So.2d 896, 899.
ARCO also relies on the following statement by the trial court at the hearing in support of its argument that a settlement occurred:
Specifically, the Court notes that during this period the plaintiff and the defendant settled their main demand.
*396 However, this statement must be put into context with the immediately preceding sentence:
However, the plaintiff asserts that the defendant's actions within that three-year period constitute a waiver of the abandonment.
First we note that the State's alleged settlement occurred on October 10, 2003, more than three years after the filing by the State of its Reconventional Demand on October 11, 1999. The State in its brief admits that the October 11, 1999 filing of its Reconventional Demand was the last step in the prosecution on the record. Therefore, by the State's own admission, the trial Court's statement that a settlement occurred during the three-year period is not correct. Likewise, if the trial court's statement that a settlement occurred were intended in the technical sense, it would be error as a matter of law as the requisite elements of a settlement are not present, as noted above.
On the other hand, the trial court is correct in its subsequent statement that:
[T]he fact that the defendants accepted a check, refund check, is not inconsistent with the defendant's position, which has been that it owed no taxes to the State of Louisiana. Therefore, it cannot be construed as an acknowledgement by the defendant.
In reaching its result the trial court also correctly distinguished the case of Clark v. State Farm Mut. Auto. Ins. Co., supra. In Clark, the defendant insurance company made an unconditional tender offer to the plaintiff. The Supreme Court held this to be an acknowledgement sufficient to interrupt the three-year period. The Supreme Court also noted that informal settlement negotiations have uniformly been held to be insufficient to constitute a step in the prosecution for purposes of interrupting abandonment. Id., p. 16, 785 So.2d at 790. The State concedes this point. The Clark opinion makes a point of explaining that the unconditional tender was not the same as a settlement.
In the instant case, the State made an unconditional tender of the check to ARCO. It made no demands of ARCO. It cannot be said that in accepting the check that included no reference to this litigation ARCO was in any way acknowledging the State's claim. Thus, the record reveals no facts in the instant case that are comparable to those considered by the Supreme Court in discussing acknowledgement in Clark, supra:
In determining whether a waiver of the right to assert abandonment occurred, the jurisprudence has recognized the appropriateness of considering the qualitative effect of the defendant's conduct.
Equity dictates recognizing the tender as an acknowledgment and thus within the waiver exception, which results in an interruption of abandonment and a recommencement of the abandonment period from the date of the tender. To place itself in a position where its post-trial exposure for penalties and attorney's fees is limited and thereby protecting its own interest, defendant made a tender to plaintiff. It would be inequitable to allow defendant to obtain that protection, yet to disallow plaintiff to invoke the tender as a basis for avoiding dismissal on abandonment. This result is consistent with the policy considerations underlying abandonment that require any doubt be construed in favor of maintaining a plaintiff's action.
Id., pp. 20-22, 785 So.2d at 792-793.
The State also cited Odessa House v. Goss, 453 So.2d 299 (La.App. 2 Cir.1984). In Odessa House, the defendant's insurer made statements and payments acknowledging liability. In the instant case, *397 ARCO made no statements or payments acknowledging liability. The facts of Odessa House bear no relationship to those of the instant case.
While Theriot v. State, Dept of Transp. & Dev., 01-1420 (La.App. 1 Cir. 9/25/01), 809 So.2d 279, 282, says that abandonment may be waived by acknowledgement, the question before the court was whether an answer filed by one co-defendant prior to the running of the three-year abandonment period constitutes a waiver of abandonment good as to all other defendants. Therefore, the facts in Theriot are inapplicable to the instant case.
Lima v. Schmidt, supra, discusses acknowledgment but not in the context of abandonment, only in the context of the interruption of prescription. In discussing payment as a form of acknowledgement, it is clear from Lima that a payment by a debtor might constitute an acknowledgement, but that a mere acknowledgement is inadequate to revive a claim once prescription has already run. In the instant case it was the State and not ARCO that made the payment. The State has conceded that once the abandonment period has run, no action by the plaintiff can revive the claim.
The State additionally complains that the trial court erred in not allowing it to put on admissible evidence necessary and relevant to the proving of its claim. The State especially complains that its counsel was not allowed to testify concerning the existence of a settlement constituting an acknowledgement by ARCO sufficient to waive abandonment.
We have reviewed the record and find that the State has not preserved this objection for review on appeal. While the State's counsel initially argued that he should be allowed to testify and presented the trial court with reasons in support of his position and some indication of what his testimony would show, when the trial judge made her final ruling disallowing counsel's testimony, counsel did not object and did not proffer his testimony. The record clearly shows that he acquiesced in the trial court's ruling:
THE COURT:
Whatever evidence you want to present, it just can't come out of your mouth.
MR. WEILER:
All right.
Similarly, in Grusich v. Grusich, 447 So.2d 93, 96 (La.App. 4 Cir.1984), the trial court ruled that an attorney for one of the parties could not testify on his client's behalf and this Court ruled when that attorney said "All right," that he thereby "acquiesced in the ruling of the trial court," and the issue was not preserved on appeal.
The State also attempted to call Mr. Mike Pierson, described as a representative of the Department of Revenue to testify. The State does not assign this ruling as error and makes no mention of Mr. Pierson in its briefs. There is nothing in the record to indicate that the State attempted to proffer any other evidence in support of its contention that the check to ARCO was a settlement check.
The record reflects that what the State seeks to prove by the testimony or other evidence it argues should have been allowed in by the trial court, is that if one focuses only on certain years covered by the audit there would be a net due the State. But that requires one to look at only a part of the audit. When the audit is considered as a whole, ARCO indisputably overpaid its taxes and was found to be due a substantial refund.
The State also argues that ARCO submitted certain discovery responses on June 13, 2003, which constituted an acknowledgment *398 and a step in the prosecution, thereby reviving the State's claim and starting the three-year period running anew[10]. However, the purported discovery responses from ARCO referred to in the State's briefs do not appear in the record, and they were not proffered by the State. Therefore, they cannot be considered by this Court.
The State makes the further argument in its Reply Brief, that ARCO "waived its right to plead abandonment by filing a `Memorandum in Opposition to the Department's Rule to Show Cause.'"[11] ARCO filed this Memorandum in Opposition, obviously out of an excess of caution, at the same time that it filed its motion to dismiss on the grounds of abandonment. Once a party has formally raised the issue of abandonment, the fact that that party may, out of an excess of caution, respond to actions taken by the opposing party that warrant a response or opposition should the claim of abandonment prove unsuccessful, will not serve to revive an abandoned claim. See In re Succession of Wright, 37,670, p. 6 (La.App. 2 Cir. 9/24/03), 855 So.2d 926, 929-930. For example, in the instant case the State filed a "Motion and Order Declaring ARCO Chemical Company's Memorandum in Opposition to Motion for Rule to Show Cause for Award of Attorney's Fees as Filed Untimely and for Order Denying Oral Argument and that Court Will Not Consider the Untimely Filed Memorandum." In other words, the effect of the State's argument was that ARCO waived its motion for dismissal for abandonment by opposing the State's rule to show cause. We disagree.
The adoption of the State's argument would place defendants in the untenable and unreasonable position of waiving abandonment should they oppose some action such as the rule to show cause filed by the State in the instant case, or, alternatively, refrain from opposing the plaintiff's action and risk losing the right to do so in the event that the Court should rule against the abandonment. La. C.C. art. 561 does not envision putting a defendant in jeopardy of waiving an abandonment already accrued and moved for but not yet ruled on, by requiring him to forego at his peril the filing of responsive pleadings or taking other appropriate defensive actions pending the ruling on his motion for dismissal. Such actions by a defendant who has moved for dismissal should not be characterized as expressing an intention inconsistent with that of abandonment.
This is analogous to La. C.C.P. art. 928 and Bickham v. Sub Sea International Inc., 617 So.2d 483 (La.1993), which held that filing a declinatory exception of improper venue in the same pleading with the answer does not under La. C.C.P. art. 928 waive that exception, and that a general appearance subsequent to filing an exception of improper venue, e.g., the filing of discovery requests, does not waive the pending exception. See Editor's Notes to La. C.C.P. art. 928.
Thus, the policy considerations invoked in the instant case when a party has formally moved for dismissal are very different from those considered by the Supreme Court in Chevron Oil Co. v. Traigle, 436 So.2d 530, 534-535 (La.1983) where the *399 defendant submitted the case for decision after the abandonment period had run:
Article 561, therefore, explicitly addresses the question of pre-abandonment waiver; however its silence concerning post-abandonment waiver could either be construed as: (1) a conscious limitation of the right of abandonment to pre-abandonment actions, (2) legislative recognition of the jurisprudentially created doctrine of waiver in all of its forms, (3) codification of the pre-abandonment doctrine of waiver, with post-abandonment waiver left to the discretion of the courts; or (4) mere inadvertence in failing to recognize the potential for post-abandonment waiver.
Without passing on the validity of the Melancon dicta for any action by the defendant short of submission of the case for decision, we conclude that submission of an abandoned case for decision effects a waiver of the right to have the suit dismissed because of want of prosecution under article 561 of the Code of Civil Procedure. The concept of abandonment is not punitive in nature. The notion is one which is designed to discourage vexatious, harrasing or frivolous suits by preventing the plaintiff from allowing such suits to linger indefinitely. Moreover, the threat of abandonment serves to hasten all suits to judgment. Once a case is submitted, its disposition is out of the hands of the parties, and nothing is gained by penalizing them for what they have failed to do before that point. Cf. Bryant v. Travelers, Insurance Co., 288 So.2d 606 (La.1974); Putch v. Straughan, 397 So.2d 38 (La.App. 2d Cir.), writ denied, 401 So.2d 976 (La.1981); Succession of Moody, 306 So.2d 869 (La. App. 1st Cir.1974), writ denied 310 So.2d 639 (La.1975); Lopez v. Southern Natural Gas Co., 287 So.2d 211 (La.App. 4th Cir.1973); Motors Insurance Corp. v. Howell, 266 So.2d 240 (La.App. 2d Cir. 1972); Burke v. State Farm Mutual Auto. Insurance Co., 234 So.2d 432 (La. App. 1st Cir.1970). Nothing is served by allowing the defendant to have a case submitted for judgment declared abandoned. If our goal is to encourage the hasty resolution of disputes, it would be anomalous for us to hold that this goal is somehow advanced by the dismissal of suits that are ready for resolution. Had the legislature intended such a paradox under article 561, it could have so explicitly stated. Without such a statement, we reject this interpretation and its result.
CONCLUSION
By joining in a motion for summary judgment and submitting the cause for a decision, the defendant has waived his right to have these cases dismissed for want of prosecution under article 561 of the Code of Civil Procedure. We recognize that article 561 is self-operating; however, it does not allow a defendant to have a case dismissed when the parties have agreed that it is ready for resolution, and that it should be decided upon the merits.
Id.[12]
The problem is that while the La. C.C.P. art. 561 rule that a case is abandoned after three years for non-prosecution seems straightforward and self-executing on its face, the jurisprudence has carved out so many exceptions that a party has no way to be sure of the court's application of that rule to the facts of a particular case. Because *400 the question of abandonment is fraught with so much uncertainty, a party cannot reasonably ignore actions taken by the opposing party that could have material consequences should the court decide against abandonment. Once a party has expressed its intentions clearly by moving for a decree of abandonment, that party should be permitted to protect its interests in the litigation pending the entry of the formal order of dismissal. ARCO's position in this case can best be characterized as follows: ARCO believes the case to be abandoned, but in the event that the court decides otherwise, it will defend its interests. This is clearly distinguishable from the situation in which a party takes an action inconsistent with abandonment prior to having formally moved for dismissal based on abandonment.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] It appears that subsequent to the filing of this suit, ARCO underwent a name change and a merger and is now known as Lyondell Chemical Company. We will continue to employ the name ARCO for purposes of these proceedings.
[2] We note that the cover letter from the State also refers to it as a "refund check."
[3] Clark v. State Farm Mut. Auto. Ins. Co., 00-3010, p. 12 (La.5/15/01), 785 So.2d 779, 788.
[4] Id., p. 11, 785 So.2d at 787.
[5] Id., 00-2729, p. 2, 801 So.2d at 1214.
[6] Id., 00-2729, p. 3, 801 So.2d at 1215.
[7] Id., 00-2729, p. 3, 801 So.2d at 1215.
[8] The emphasis is original to this quotation.
[9] Emphasis added.
[10] The Supreme Court in Clark, supra, 00-3010, p. 14, 785 So.2d at 789, fn. 15, lists several examples of waiver of accrued abandonment, including "provoking or responding to discovery."
[11] This refers to the State's rule to show cause whereby it asserted its claim for the attorney's fees that are the subject of this appeal.
[12] See cases cited in Chevron, 436 So.2d at 534, giving examples of what actions by a defendant might revive a case after the expiration of the abandonment period has already run.