DENNIS R. BAGNERIS, SR., Judge.
hThe Appellant, Klein Steel, Inc. (“Klein Steel”), seeks review of a judgment of the trial court awarding the Appellee, Stallings Construction Company, Inc. (“Stallings Construction”), $73,341.67,[1] together with attorney’s fees in the amount of $9,736.00 in damages for breach of contract. For the following reasons, we affirm.
FACTS
On June 5, 2008, Stallings Construction and Klein Steel entered into two subcontract agreements for a project that involved the Catholic Charities Food for Families Building located at 5600 Hayne Boulevard, New Orleans, Louisiana. Stall-ings Construction, as general contractor, sub-contracted with Klein Steel, as subcontractor, to build (1) the main metal building, for a contract price of $135,000.00, and (2) provide steel fabrication and installation of the second floor and other miscellaneous steel work, for a separate contract price of $131,204.00.
On August 5, 2009, Stallings Construction filed suit against Klein Steel alleging that Klein Steel failed to perform the work as agreed upon in the | {.subcontract agreement and that Klein Steel was placed in default on January 28, 2009. As such, Stallings Construction alleged that it suffered cost overruns in the amount of $23,228.72, and that it should be awarded all reasonable attorney’s fees incurred from the date of default. On November 4, 2009, Klein Steel answered the petition with a general denial and also brought a reconventional demand against Stallings Construction. In the reconventional demand, Klein Steel argued that Stallings Construction breached the subcontract by renegotiating with Ruben Diego “Ruben,” one of Klein Steel’s subcontractors, and paying him directly, and that Stallings Construction failed to pay for work performed to alter the original shop drawings.
On June 14, 2011, Stallings Construction filed its first amended petition alleging that as a result of Klein Steel’s failure to perform the subcontract, it had “incurred cost overruns in the amount of $59,906.68.”
After a one-day bench trial, the trial court found in favor of Stallings Construction in the amount of $55,841.67, together with attorney’s fees in the amount of $9,736.00 and legal interest from date of judicial demand. The trial court further ordered that there be judgment in favor of Stallings Construction against Klein Steel in the amount of $17,500.00 “which represents the difference between the contract price between the parties ($75,000.00) and direct payments ($92,500.00) to subcontractor, Ruben Diego.” Klein Steel now appeals this final judgment.
*392 On appeal, Klein Steel alleges the following three assignments of error: (1) whether the trial court erred in finding Klein Steel breached the contract with Stallings Construction; (2) whether the trial court erred in calculating Stallings | .^Construction's cost overruns in the amount of $55,841.67; and (3) whether the trial court erred in refusing to award Klein Steel any amount for unpaid labor costs.
STANDARD OF REVIEW
In Louisiana, appellate courts review both law and facts. La. Const. Art. V, Sec. 10(B). The standard of review for a factual finding is the manifestly erroneous or clearly wrong standard. To reverse a fact finder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Stobart v. State, through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart, 617 So.2d at 882. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, 617 So.2d at 882-883. Accordingly, where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Sto-bart, 617 So.2d at 883. Further, when a fact finder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). The credibility determinations of the trier of fact are subject to the strictest deference under the manifest error-elearly wrong standard. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305, 1313. The standard of review for a damage award for breach of contract is whether the trial |4court abused its discretion. Taaffe v. Factory Direct Installations, Ltd., 2008-0175, p. 14 (La.App. 4 Cir. 04/15/09), 13 So.3d 562, 569.
DISCUSSION
In its first assignment of error, Klein Steel argues that Stallings Construction breached the initial contracts when it started paying Ruben (its own steel erection subcontractor) directly. Specifically, Klein Steel argues that Stallings Construction sent a letter to it on December 22, 2008 stating that Stallings Construction intended to pay Ruben $92,500.00 when Klein Steel had already negotiated a contract to pay Ruben $75,000.00.
Stallings Construction argues that because Klein Steel could no longer afford to pay Ruben, it elected to pay him to avoid having him leave the job and cause additional delays. Stallings Construction argues that both contracts allow for it to “remedy the ‘default’ on Klein Steel’s part (not paying its own subcontractor for work performed, or materials and labor provided) by ‘whatever means Contractor may deem necessary or appropriate.’ ”
After reviewing the contracts at issue, as well as Russell Klein’s testimony, we find no merit in Klein Steel’s argument that Stallings Construction breached the initial contracts. Mr. Klein testified that he was in financial difficulty before the job started and that he asked Stallings Construction to pay Ruben once he was unable to do so. Further, both contracts provide:
*393 13. DEFAULT. Should Subcontractor fail in the performance or observance of any of the covenants, conditions, progress, or other terms of this Subcontract, or fail in any respect to diligently commence or prosecute the work ..., Contractor shall, after giving Subcontractor notice of default and 24 hours within which to cure, have the right to exercise any one or more of the following remedies:
Is(a) The Contractor may remedy the default by whatever means Contractor may deem necessary or appropriate including, but not limited to correcting, furnishing, performing, or otherwise completing the Work, by itself, or through others, and deducting the cost thereof from any monies due or to become due to Subcontractor hereunder;
Accordingly, the contracts at issue allow Stallings Construction, as Contractor, to remedy the “default” on Klein Steel’s part by paying Ruben directly to keep the job moving forward.
In its second assignment of error, Klein Steel argues that Stallings Construction failed to carry the burden of proving its alleged damages. Specifically, Klein Steel argues that the cost overrun was initially calculated to be $23,228.72, but that it doubled to $55,841.67 during trial. We find no merit in this assignment of error.
Klein Steel was placed in default on January 28, 2009. Thereafter, the project was completed by Ruben and his steel crew (paid directly by Stallings Construction) and the hiring of a new steel fabricator. Although the initial cost overrun was calculated to be $23,228.72, Stallings Construction filed exhibits into the record verifying that the steel roof (constructed under Klein Steel’s supervision) was leaking and that a warranty would not be issued by the manufacturer until it was corrected. Thus, additional costs and expenses were incurred in correcting the steel roof defects that caused a new and final cost overrun of $55,841.67 to be calculated. After reviewing the record, and the fact that Klein Steel failed to introduce any evidence at trial to rebut the cost overrun calculation, we find that the trial court correctly awarded Stallings Construction $55,841.67.
|Jn its third assignment of error, Klein Steel argues that it should have been awarded an amount for its labor because the building was 90 to 95% complete when it left the job. We find no merit in this assignment of error.
Although Klein Steel states that Aaron Middleberg (Stallings Construction’s project manager) testified that the building was 90 to 95% complete on January 28, 2009 when Klein Steel left the job site, Mr. Middleberg further stated that the remainder of the project to be completed by Klein Steel under both subcontracts “was a mess.” Specifically, Aaron Middleberg testified as follows:
Q. Okay. And, at that point, what percentage of the building, the metal building itself should have been completed?
A. A hundred percent.
Q. What percentage was completed?
A. I can’t say an exact for sure.
Q. An approximation?
A. Maybe 90, 95 percent.
Q. On January 28?
A. Yeah.
Q. And what about the miscellaneous steel, the second floor steel and the stairs and that type of thing, where should they have been?
A. It should have been a lot further than it was. I don’t know an exact percentage on that, but it was far from complete. It was a mess.
Q. What do you mean by that?
A. It — it took us several weeks to sort through it after Klein Steel had left to *394 get it organized and get production back up and going.
|7Further, Klein Steel had been placed in default and as a result, Klein Steel was not entitled to any payments. As stated in the subcontracts regarding a default:
Section 13(d) The Contractor may terminate this Subcontract Agreement and take possession of the Work (including the Subcontractor’s materials, tools, plant, equipment and appliances used or to be used in connection therewith, whether on or off the site) and cause the entire remaining Work to be finished and the materials therefore to be furnished by another subcontractor or subcontractors as may be deemed appropriate by the Contractor. In this event, the Subcontractor shall not be entitled to any further payment whatsoever. If the expense incurred by the Contractor in finishing the Work (including but not limited to overhead, attorney’s fees, damages, court costs, interest, and/or penalties incurred through the default of the Subcontractor) plus the amount paid the Subcontractor hereunder shall exceed the Price, the Subcontractor shall pay the excess to the Contractor within thirty (30) days after receipt of written notice demand thereof....
The record is also void of any evidence to prove Klein Steel’s losses. Thus, under these facts, we do not find that the trial court erred when it failed to award Klein Steel for its labor.
Accordingly, we hereby affirm the judgment of the trial court, which found in favor of Stallings Construction and awarded it $73,341.67, together with $9,736.00 in attorney’s fees.
AFFIRMED

. The district court awarded $55,841.67 plus $17,500.00, which represents the difference between the contract price between the parties ($75,000.00) and direct payments ($92,-500.00) to subcontractor, Ruben Diego.