Judge Joy Cossich Lobrano
_J_iThis breach-of-contract action arises from a long-standing dispute relating to a 1996 construction contract entered into by appellees, Sterling Doucette and Doucette & Associated Contractors, Inc. (collectively “Doucette”), and appellants, Angele Jackson Guient and Borjius Guient (collectively the “Guients”), to build the Guients’ residence in New Orleans, Louisiana. For the reasons that follow, we affirm in part and reverse in part the district court’s award of damages to Doucette. We affirm the district court’s judgment awarding no damages to the Guients on their reconven-tional demand. Lastly, we reverse the district court’s award of attorney’s fees to Doucette.
In April of 1996, Doucette and the Guients entered into a contract for the construction of the Guients’ new home. The Guients provided Doucette with plans and specifications prepared by their architect. The original contract price was $177,000.00. The Guients paid Doucette a total of $159,300.00 for the work, withholding the final $17,700.00 payment due to alleged deficiencies in the work, delays in construction, and Doucette’s failure to complete the home.
In September of 2003, seven years after executing the contract, Doucette sued the Guients to recover the cost of change orders and the unpaid balance due on the contract. Doucette sought $48,219.65 in damages for breach of contract and | ¡.requested attorney’s fees. Doucette asserted that he was entitled to the unpaid balance due under the original contract, as well as $30,519.65 for oral and written change orders allegedly agreed to by the Guients.
In response, the Guients filed a Recon-ventional Demand to recover amounts they allegedly expended to complete the construction of the home. They also sought damages for the devaluation of the property allegedly caused by Doucette’s delay and poor workmanship. They alleged that Doucette failed to construct the home in accordance with the plans and specifications. The Guients sought $60,786.66 in damages, which included the cost of labor and materials to complete the construction, the devaluation of the home because of Doucette’s failure' to follow the plans and specifications, and costs.
The record shows that nothing was filed for another three years, until March 8, 2007, when the Guients filed an Ex Parte Motion to Dismiss Action Based Upon Abandonment pursuant to La. C.C.P. art. 561. The Guients argued that, because the *448 last action taken in the prosecution or defense of the action was the Guients’ service of answers to interrogatories on Doucette on February 14, 2004, the three-year abandonment period had elapsed. This motion was granted.
Thereafter, Doucette filed a Motion to Set Aside Dismissal. In this motion, Dou-cette argued that, pursuant to several Executive Orders issued by the Governor of Louisiana in the wake of Hurricanes Katrina and Rita, the three-year abandonment period was suspended from September 6, 2005 through November 25, 2005.[1] According to Doucette, because these days were not counted in | ^computing the abandonment period, Doucette’s claims would not have been abandoned until May 5, 2007. On June 1, 2007, the district court signed a judgment granting Doucette’s Motion to Set Aside Dismissal, and reinstated the matter to the court’s docket.
On June 12, 2007, the Guients filed a Motion for New Trial, urging reconsideration of the Motion to Set Aside Dismissal, arguing that under La. R.S. 9:5822 (which codified the Governor’s Executive Orders regarding prescription, with certain exceptions), the abandonment period was not suspended. In Doucette’s opposition to the Guients’ Motion for New Trial, Doucette argued for the first time that the five-year abandonment period set forth in La. C.C.P. art. 561(A)(2) applied because Dou-cette was unable to prosecute the action due to the Hurricane Katrina evacuation.[2] On October 26, 2007, the district court signed a judgment denying the Guients’ Motion for New Trial. The Guients did not seek supervisory writs from the district court’s decision granting Doucette’s Motion to Set Aside Dismissal. This case lingered for another eight years.
A one-day bench trial was finally held in April 2015. On July 31, 2015, the district court rendered a judgment in favor of Doucette and against the Guients, awarding Doucette the sum of $48,219.65, 40% of that amount in attorney’s fees, plus costs and filing fees. The district court did not award the Guients damages on their Re-conventional Demand. The Guients now appeal the July 31, 2015 judgment, along with the interlocutory judgment granting Doucette’s Motion to Set Aside Dismissal.
LThis appeal timely followed.
Interlocutory Judgment Setting Aside Dismissal
First, the Guients appeal the interlocutory judgment granting Doucette’s Motion to Set Aside Dismissal. As a threshold matter, Doucette contests this assertion by stating that this Court has no jurisdiction to review interlocutory judgments. “It is well-settled that although an interlocutory judgment may not itself be immediately appealable, it is nevertheless subject to review by an appellate court when a judgment is rendered in the case which is appealable.” Favrot v. Favrot, *449 2010-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102, n. 1. The proper procedure to seek review of an interlocutory judgment under the appeal of a final judgment is to include it in the assignments' of error. See Lawson v. Straus, 98-2096, p. 4 (La.App. 4 Cir. 12/8/99), 750 So.2d 234, 238. Accordingly, we will address the interlocutory judgment.
Whether an action has been abandoned is a question of law.[3] Olavanieta v. St. Pierre, 2004-1566, p. 3 (La.App. 4 Cir. 5/11/05), 902 So.2d 566, 568. It is undisputed that no formal action took place in this case for more than three years between February 14, 2004 (the date the Guients responded to Doucette’s interrogatories) and March 8, 2007 (the date the Guients filed a Motion to Dismiss on the grounds of abandonment). La. R.S. 9:5822, which was enacted by the legislature in response to Hurricanes Katrina and Rita, temporarily suspended all prescriptive periods in proceedings in the state, with certain exceptions, stating:
IfiA. All prescriptions, including libera-tive,[4] acquisitive, and the prescription of non-use, and all peremptive periods shall be subject to a limited suspension and/or extension during the time period of August 26, 2005, through January 3, 2006; however, the suspension and/or extension of these periods shall be limited and shall apply only if these periods would have otherwise lapsed during the time period of August 26, 2005, through January S, 2006.... (emphasis added)
Although La. R.S. 9:5822 provides that all prescriptive periods shall be suspended or extended during the time period between August 26, 2005 through January 3, 2006, this 89-day suspension or extension applies only if the prescriptive period would have otherwise lapsed during this time period. In the case sub judice, it is undisputed that the three-year abandonment period lapsed on February 14, 2007, which was not during the period between August 26, 2005 and January 3, 2006. La. R.S. 9:5822, therefore, does not apply. See Harris v. Stogner, 2007-1451, p. 3 (La. 11/9/07), 967 So.2d 1151, 1152 (finding that plaintiff abandoned his claims by not taking action in the suit until June 13, 2006, after the period set forth in La. R.S. 9:5822). Thus, the district court erred in setting aside the dismissal of the ease.[5]
However, unlike a plaintiffs actions, which cannot undo abandonment, “[cjertain actions taken by a defendant after the accrual of the abandonment period can constitute a waiver of the right to have a case dismissed for abandonment.” True Gospel of Jesus Christ Church Ministry v. Doucette, 2008-0634, p. 6 (La.App. 4 Cir. 11/19/08), 999 So.2d 795, 798. This takes place when a defendant has “taken steps that facilitated the judicial resolution of the dispute on the merits and | fiwere an expression of the defendant’s willingness *450 or consent to achieve judicial resolution of the dispute.” Id.
“In determining whether a waiver of the right to assert abandonment occurred, the jurisprudence has recognized the appropriateness of considering the qualitative effect of the defendant’s conduct.” Slaughter v. ARCO Chem. Co., 2005-0657, p. 14 (La.App. 4 Cir. 4/26/06), 931 So.2d 387, 396 (internal citations omitted). Importantly, the Guients never sought supervisory writs from the district court’s decision granting Doucette’s Motion to Set Aside Dismissal.[6] Later, the Guients signed the scheduling order, signed the order setting the case for trial, acknowledged receipt of the pre-trial notice, filed a witness list, filed a joint pretrial outline, and participated in a bench trial. The record shows that the Guients facilitated bringing this case to trial. See Clark v. State Farm Mutual Auto Ins. C., 2000-3010 p. 14, n. 15 (La. 5/15/01), 785 So.2d 779, 789 (stating that “examples of conduct by defendants that have been held sufficient to waive abandonment include agreeing to a trial setting, submitting the case for decision, seeking security for costs, or provoking or responding to discovery.”) (internal citations omitted).
“Moreover, the threat of abandonment serves to hasten all suits to judgment.” Slaughter, 2005-0657 at p. 19, 931 So.2d at 399. “Once a case is | submitted, its disposition is out of the hands of the parties, and nothing is gained by penalizing them for what they have failed to do before that point.” Id. “Nothing is served by allowing the defendant to have a case submitted for judgment declared abandoned.” Id. Despite the district court’s error in granting Doucette’s Motion to Set Aside Dismissal, the Guients waived their right to assert abandonment. As a result, we reach the merits of their claims.
Damages Awarded to Doucette
The Guients argue that the district court erred in failing to find that Doucette performed his contract in an un-workmanlike manner; awarding Doucette damages, including attorney’s fees, for that unworkmanlike performance; and finding that the Guients authorized oral change orders resulting in an additional award of damages. The standard of review for a damage award for breach of contract is whether the district court abused its discretion. Stallings Const. Co. v. Klein Steel, Inc., 2012-1482, pp. 3-4 (La.App. 4 Cir. 3/27/13), 112 So.3d 389, 392.
The Guients assert that because Doucette performed his work in an un-workmanlike fashion, he was not entitled to the outstanding balance on the contract price awarded by the district court, $17,000.00. Substantial performance of a contract entitles the performer to the balance due under the contract, less the *451 amount necessary to complete the work. Ducote v. Arnold, 416 So.2d 180, 182 (La. App. 4th Cir. 1982). Substantial performance, which is a question of fact, exists when the construction may be used for the purpose intended regardless of defects or omissions. Id.
|sThe district court’s finding of substantial performance is manifestly erroneous.[7] The record indicates that the Guients had to complete substantial work on the home prior to being able to move into it and that the home failed to pass inspections when the Guients took possession of it from Doucette. Further, although Doucette sued for nonpayment the district court stated in its reasons for judgment that “the Guients did not prove sufficient deficiencies in construction to merit non-payment of the balance of the written contract. . ,.”[8] This improper burden shifting renders the damage award based upon it an abuse of discretion. See LCR-M Ltd. P’ship v. Jim Hotard Properties, L.L.C., 2013-0488, p. 9 (La.App. 4 Cir. 10/9/13), 126 So.3d 668, 676 (stating “a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law.”). As a result, we reverse the portion of the judgment awarding “$17,000.00 to Dou-cette as the unpaid balance due on the original written construction contract.”
As to the change orders, Sterling Doucette, Sr., testified as to the existence of a myriad of written and verbal change orders allegedly approved by Ms. Guient. One written change order was presented to the district court, for a closet extension and the removal of columns from the family room entryway. For this change order, the district court awarded Doucette $14,519.65. Given that this award was supported by testimony and documentation, we affirm this portion of the judgment.
However, the district court also awarded damages for three verbal change orders: $4,106.52 for installation of additional windows, $2,639.00 for relocation [9of the stairs, and $9,254.48 for “designing installation and installing gas lines, installing crown molding, installing ceramic floors instead of vinyl floors, mirrors, and bathroom accessories.” Whether or not a verbal agreement is valid is a question of fact; and further, written contracts may be modified by oral agreement, even when the written contract forbids such modification. Pelican Elec. Contractors v. Neumeyer, 419 So.2d 1, 5 (La. App. 4 Cir. 1982) (internal citations omitted). A review of the transcript indicates that Ms. Guient testified specifically that she never approved these change orders and that she continued to argue with Doucette about them throughout the construction of the home. Further, these orders were contrary to the plans; resulted in delays in construction; and were, according to Doucette’s own un-controverted testimony, contrary to the contract Doucette provided. In fact, Dou-cette’s contract provided that even emergency change orders should be reduced to writing. Nothing in the record provides an explanation as to why Doucette failed to follow their own procedure.
Given the lack of any verification of these expenses, the contradictory testimony, and the question as to why Doucette did not follow its own procedure, the dis *452 trict court’s factual finding that these verbal change orders were valid is manifestly erroneous. Thus, we reverse the portion of the July 31, 2015 judgment awarding Dou-cette $4,106.52 for installation of additional windows, $2,639.00 for relocation of the stairs, and a total of $9,254.48 for “designing installation and installing gas lines, installing crown molding, installing ceramic floors instead of vinyl floors, mirrors, and bathroom accessories.”
Reconventional Demands
The Guients next contend that the district court erred in finding that they are not entitled to damages for their reconven-tional demand. They argue that the |1flevidence presented at trial established that Doucette’s failure to complete the house in a timely and workmanlike manner in accordance with the plans and specifications caused them damages in the form of: (1) payments to other subcontractors to complete Doucette’s work; (2) devaluation of the home; and (3) penalties and interest on the Guients’ construction loan.
“The standard of review for a factual finding is the manifestly erroneous or clearly wrong standard.” Klein Steel, 2012-1482 at p. 3, 112 So.3d at 392 (internal citations omitted). Where there is conflicting testimony, reasonable evaluations of credibility and inferences of fact are subject to the strictest deference. Id.
La. C.C. art. 2769, which governs building and construction contracts, provides in pertinent part:
If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
First, addressing the Guients’ claim for damages relating to paying other subcontractors to complete Doucette’s unfinished work, Ms. Guient testified that the Guients withheld $17,700.00 of the purchase price from Doucette, yet had to pay other subcontractors a total of $20,786.66. Doucette also admitted to terminating an air conditioning subcontractor and not completing the work, resulting in a lawsuit being filed against the Guients. Ms. Guient testified that the Guients paid that subcontractor “over 5,000 dollars.”[9] The Guients, however, did Innot introduce any receipts, invoices, or other evidence of these alleged payments to other subcontractors at trial.[10]
Although a plaintiff can establish damages through evidence consisting only of his or her testimony, such testimony is subject to the trier of fact’s evaluation of credibility. Buddy’s Tastee # 1, Inc. v. Tastee Donuts, Inc., 483 So.2d 1321, 1323 (La. App. 4th Cir. 1986). Although the record shows that the Guients did have to complete significant work on the home, the district court evidently did not find that Ms. Guient’s testimony on the amount of money spent to complete the home credi *453 bly established a specific amount of damages. We find no manifest error.
Further, the Guients asserted in them Reconventional Demand a claim for $40,000.00 in damages for the devaluation of the property caused by Doucette’s alleged failure to comply with the plans and specifications. Ms. Guient admitted at trial that the original contract price was $177,000.00 and that the Guients paid Dou-cette only $159,300.00 to build the house. Ms. Guient also testified that she and her husband sold the flooded house in a gutted condition following Hurricane Katrina in 2006 for $310,000.00.[11] Although Ms. Guient testified that they “lost money” on the sale of the house because they had installed a custom-built pool, a hot tub, a boat dock, and state-of-the art landscaping and fencing, the Guients produced no evidence showing the value of these alleged improvements. The h..district court concluded that the Guients “failed to prove that the home was devalued due to Dou-cette’s failure to conform to plans.” We find no manifest error.
At trial, Ms. Guient testified that' the Guients had to pay their lender “almost three times what [their] mortgage would have been” in penalties and interest on their construction loan due to Doucette’s failure to timely complete the project. Specifically, Ms. Guient testified that the Guients had to pay $5,400.00 per month for an additional six months. Again, other than Ms. Guient’s testimony, the Guients submitted no documentary evidence showing the amount of the alleged penalties and interest that they had to pay their lender, such as bank statements or canceled checks. In the absence of such substantiating evidence, we find that Ms. Guient’s testimony alone regarding payments of penalties and interest was insufficient to establish with legal certainty the amount of these alleged payments. Cf. Harbor Constr. Co. v. Bd. of Supervisors of Louisiana State Univ. and Agricultural and Mechanical College, 2010-1663, pp. 18-19 (La.App. 4 Cir. 5/12/11), 69 So.3d 498, 507-08 (sufficient evidence supported amount of damages claimed by contractor where contractor provided itemized list of expenses, copies of invoices, cancelled cheeks, and statements of specific expenses incurred).
In sum, based on our review of the record, the Guients’ claim for damages against Doucette is supported solely by Ms. Guient’s testimony. Given the deference due to the district court’s credibility determinations, we conclude that the district court did not manifestly err in concluding that the Guients were not entitled to damages.
Attorney’s Fees
(The record in this case indicates that there is no basis in statute or in contract for an award of attorney’s fees. “As a general rule, attorney’s fees are not | ^assessable as an item of damages except where provided for by statute or by contract.” Paz v. BG Real Estate Servs., Inc., 2005-0115, p. 2 (La.App. 4 Cir. 12/14/05), 921 So.2d 186, 188. Thus, we vacate the portion of the judgment awarding “Dou-cette forty percent of the total judgment in attorney’s fees.”
Decree
In conclusion, we reverse the award of $17,000.00 to Doucette for the balance of the original contract; affirm the award of $14,519.65 to Doucette for the written change order; reverse the awards .of $4,106.52, $2,639.00, and $9,254.48 to Dou-cette for verbal change orders; affirm the district- court’s denial of damages to the *454 Guients for their reconventional demands; and reverse the district court’s award of attorney’s fees to Doucette.
AFFIRMED IN PART; REVERSED IN PART.
BONIN, J., DISSENTS IN PART WITH REASONS; JENKINS, J., DISSENTS AND ASSIGNS REASONS.

. In Executive Order No. KBB 2005-32, Governor Blanco declared that "[a]ll deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005 .... This Order ... shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005....” Thereafter, in Executive Order No. KBB 2005-48, the Governor amended the previous Order to suspend these deadlines until "at least October 25, 2005,” Finally, in Executive Order No. KBB 2005-67, the Governor extended the suspension of deadlines "until November 25, 2005.” The action of the Governor in issuing Executive Orders KBB 2005-32, 48, and 67 was "approved ratified, and confirmed subject to the provisions of R.S, 9:5822 through 5825.” See La. R.S. 9:5821(B).

. La, C.C.P. art. 561(A)(2) was terminated by Acts 2007, No. 361, 51 effective August 26, 2010.

. The record in this case lacks a transcript from the hearing wherein Appellee’s Motion to Set Aside Dismissal was granted, although the judgment appears in the record. Given that it is clear from the record that Appellants waived the abandonment, the transcript is not necessary for this ruling.

. Abandonment is a form of liberative prescription. Slaughter v. ARCO Chem. Co., 2005-0657, p. 5 (La.App. 4 Cir. 4/26/06), 931 So.2d 387, 391-92.

.After an amendment that was effective on July 9, 2007, La. C.C.P. art. 561(A)(2) allowed claims "not previously abandoned” an extension of the abandonment period to five years. Because the Guients claim was abandoned on February 14, 2007, prior to the effective date of this amendment, La. C;C.P. art. 561(A)(2) does not apply.

. There is an argument that by obtaining this interlocutory judgment, the Guients preserved their right to appeal the abandonment decision regardless of their later conduct. See City of Baton Rouge/Par. of E. Baton Rouge v. Smuggy’s Corp., 2014-0134, p. 7 (La.App. 1 Cir. 10/16/14), 156 So.3d 202, 207 (internal citations omitted) (stating “once a party has formally raised the issue of abandonment, actions taken to defend the case pending a final ruling on the claim of abandonment will not serve to revive an abandoned claim). Actions taken to defend the case must be distinguished from actions facilitating and expressing consent to judicial resolution. In Smuggy’s Corp., actions to defend the case included participating in a status conference while appealing the abandonment issue and filing a memorandum in opposition contemporaneously with a motion to dismiss based on abandonment. Id. In the case sub judice, unlike the actions used as examples Smuggy’s Corp., the actions of the Guients moved the case to judicial resolution rather than simply defending the case while awaiting a final determination of abandonment.

. Questions of fact are subject to the manifest error standard of review. Foley v. Entergy Louisiana, Inc., 2006-0983, p. 9 (La. 11/29/06), 946 So.2d 144, 153.

. See Arnold, 416 So.2d at 182 (finding that “once substantial performance has been shown the burden of proof then shifts to the owner who must prove the existence and nature of the alleged defects, that they are due to faulty material and/or workmanship, and the cost of repairing the defects.”) (emphasis added) (internal citations omitted).

. The Appellant brief indicates that this subcontractor was paid $5,775.00. However, the brief does not cite to anything in the record verifying this amount. The trial testimony of Ms, Guient was that the Guients paid this subcontractor "over 5,000 dollars.”

. We note that in December of 2003, Dou-cette propounded requests for production of documents to the Guients, seeking copies of all documents relating to payments allegedly made by the Guients to other subcontractors. Although the Guients were proceeding pro se, they objected to these requests on the grounds of attorney-client privilege and the attorney work-product doctrine, and never produced any documents to Doucette. Mrs. Guient testified at trial that, although they had these documents in their possession when they received the 2003 discovery requests, the documents were destroyed in Hurricane Katrina.

. The Guients bought the lot in 2005 for $50,000.00.