453 So.2d 299 (1984)
ODESSA HOUSE, Plaintiff-Appellee,
v.
Kenya Sue GOSS, and State Farm Mutual Automobile Insurance Company, Defendants-Appellants.
No. 83-548.
Court of Appeal of Louisiana, Third Circuit.
June 14, 1984.
*300 Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., for defendants-appellants.
Chris J. Roy, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
Plaintiff, Odessa House, instituted the present suit on September 23, 1980, claiming personal injuries and medical expenses as a result of an automobile accident which occurred in Oakdale, Louisiana, on September 22, 1979. Defendants, Kenya Sue Goss and her liability insurer, State Farm Mutual Insurance Co., responded by filing a peremptory exception of prescription of one year. The trial judge subsequently overruled the exception and thereafter rendered judgment in favor of plaintiff in the sum of $15,000.00. Defendant State Farm Mutual Insurance Company appeals the overruling of its exception of prescription. We affirm.
Plaintiff was a passenger in an automobile owned and operated by her husband, Billy House, when it collided on September 22, 1979, at an intersection with an automobile driven by Kenya Sue Goss who failed to stop at a stop sign. Both automobiles were insured for liability and medical coverage by State Farm Mutual Automobile Insurance Company. Negotiations between plaintiff and the insurer ensued and it is on this basis that appellee contends prescription was interrupted by acknowledgement.
Plaintiff introduced into evidence a letter from plaintiff's attorney to defendant's adjuster dated June 6, 1980 advising of representation by him, that State Farm insured the House automobile and inquiring which policy would take care of the House medical bills. Introduced as Exhibit "House-2" was a letter dated June 9, 1980 from defendant's adjuster to plaintiff's attorney which stated in pertinent part:
"Under Mrs. House's personal insurance policy with State Farm there is a medical pay coverage of $2,000.00 on which we do have subrogation rights. Therefore, her medical bills have not been paid under the medical portion of her policy, but rather under the liability portion of the Kenya Sue Goss policy who is evidently at fault in this accident.
"If you have any medical specials which I have not paid to date, please forward them directly to my attention and they will be promptly paid as a liability advance payment under the Goss policy.
"To date, on behalf of Odessa House, I have paid the following medical bills:
* * * * * *
Total paid to date $524.39
"Please review this claim at your very earliest convenience and provide me with *301 your evaluation of it and settlement demand."
Subsequently, the adjuster tendered an offer of $5,000.00 plus medicals in an attempt to settle the claim. The offer was never revoked.
On June 30, 1980, defendant's adjuster again wrote to plaintiff's attorney requesting a settlement demand.
Mrs. House never personally dealt with the defendant's insurer or any of the insurer's agents. Mr. House testified that after the accident, he initially contacted his agent, Wade Green, for State Farm in Oakdale. Nolan Craven, a claims adjuster for the insurance company, later got in touch with Mr. House and from then on handled the House case. Thereafter, Mr. Craven arranged the payment of $5,600.00 for the House's totaled automobile and arranged the payment of all medical bills arising from the accident. Subsequently, Mr. Craven and Mr. House had a series of conversations with respect to the plaintiff's claim for personal injuries. The adjuster admitted the defendant was "evidently at fault" and three to four weeks after the accident made an offer of $5,000.00 plus medicals in an attempt to settle the claim. Mr. House felt that his acceptance of the offer on behalf of his wife would be premature, in light of her continuing medical problems. At no time was the settlement offer subsequently withdrawn. Mr. Craven then told Mr. House to continue taking the plaintiff to doctors and to send him all medical bills. He told Mr. House to come back once his wife's medical condition was ascertainable and they would settle on an acceptable sum for her personal injuries. Thus the adjuster paid all of plaintiff's medical expenses under the Goss policy, paid for the loss of the House' vehicle, and sought to pay appellee's personal injury claim.
In the trial court, plaintiff contended that the parties' communication constituted sufficient acknowledgement of plaintiff's "right" to interrupt the running of the one year prescription against plaintiff's claim. The trial court agreed and overruled defendant's exception of prescription without assigning reasons.
At the time of this accident Civil Code Article 3520 provided:
"Prescription ceases likewise to run whenever the debtor or possessor, makes acknowledgement of the right of the person whose title they prescribed."
The article was changed effective January 1, 1983, and now bears Civil Code Article 3464 and states:
"Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."
An acknowledgement interrupting liberative prescription may be oral or written, formal or informal, express or tacit. Lake Providence Equipment Co. v. Tallulah Production Credit Assoc., 257 La. 104, 241 So.2d 506 (1970). However, the interruption of prescription has no effect beyond the specific right of the person of which the debtor makes acknowledgement. Flowers v. United States Fidelity & Guaranty Co., on rehearing, 381 So.2d 378 (La.1980).
Appellant contends that as there was medical expense coverage under the House policy which applied to Mrs. House's injuries, the payment of medical expenses, even under the Goss policy, did not constitute an acknowledgement of Mrs. House's personal injury claim. Appellant also contends that the requests for a settlement demand in an attempt to negotiate a settlement did not constitute an acknowledgement of plaintiff's bodily injury claim sufficient to interrupt prescription citing Emery v. Cabral, 400 So.2d 340 (La.App. 4th Cir. 1981) writ denied, 405 So.2d 533 (La.1981), wherein the court stated:
"The general rule regarding the burden of proof is that when the plaintiff's petition shows on its face that the prescriptive period has run, and the plaintiff is contending there was a suspension or interruption of prescription, the burden is on the plaintiff to prove the suspension or interruption. Cordova v. Hartford Accident and Indemnity Company, 378 *302 So.2d 1088 (La.App. 3rd Cir.1979)[*]; Yarbrough v. Louisiana Cement Company, Inc., 370 So.2d 602 (La.App. 4th Cir.1970) writ denied, 373 So.2d 531 (La.1979).
Furthermore, the recognition of the mere existence of a disputed claim is not such an acknowledgement within the contemplation of Article 3520 as will effect an interruption of the running of prescription. The acknowledgement must be accompanied by or coupled with a clear declaration of intent to interrupt the prescription then running. Marathon Insurance Company v. Warner, 244 So.2d 353 (La.App. 2nd Cir.1971)."
Prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished by it. State ex rel. Guste v. Simoni, Heck and Associates, 331 So.2d 478 (La.1976); Gulf Oil Corp. v. State Mineral Board, on rehearing, 317 So.2d 576 (La.1975); Foster v. Breaux, 263 La. 1112, 270 So.2d 526 (1972). Prescription statutes find their justification in the desire to avoid unfair prejudice to the defendant by requiring him to defend a stale claim and to be put to a defense after memories have faded, witnesses are gone, and evidence has been lost; and to avoid prejudice to a defendant who was in ignorance of the asserted obligation. Here, the defendant was fully aware of the asserted obligation as evidenced by representations to plaintiff and suit was filed only one day after the prescriptive period.
As the Supreme Court stated in Flowers v. U.S. Fidelity & Guaranty Company, supra:
"... acknowledgement sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge or in other ways; ... it may be implicit or it may be inferred from the facts and circumstances."
The policy considerations regarding the weight of evidence to support a plea of interruption of prescription were set forth in Trainer v. Aycock Welding Co., 421 So.2d 416 (La.App. 1st Cir.1982) as follows:
"It has long been the public policy of this state that the compromise of disputes are highly favored and promote judicial efficiency. La.C.C. Art. 3071, et seq.; Richard v. Southern Farm Bureau Casualty Insurance Company, 254 La. 429, 223 So.2d 858 (1969); Saunders v. New Orleans Public Service, Inc., 387 So.2d 603 (La.App. 4th Cir.1980), writ denied 394 So.2d 614 (La.1980); McKowen v. Gulf States Utilities Company, 358 So.2d 675 (La.App. 1st Cir.1978); Louisiana Farm Bureau Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company, 348 So.2d 1311 (La.App. 3rd Cir.1977). Candid and good faith settlement negotiations should be encouraged between the parties to a dispute to implement this policy. If settlement negotiations which do not result in an oral compromise agreement can constitute an acknowledgement of the disputed indebtedness so as to interrupt prescription, then undoubtedly in the future such negotiations will be less candid and less productive. We do not believe that the law should be interpreted to place such a chilling effect on settlement negotiations."
The Louisiana Supreme Court in Collins v. Capital Valve and Fitting Company, 409 So.2d 579 (La.1982), held that the compromise of plaintiff's property damage claim arising out of an automobile accident did not serve to constitute an acknowledgement of plaintiff's claims for medical expenses, lost wages and personal injuries arising out of the same accident sufficient to interrupt the running of prescription and therefore maintained defendant's plea of prescription. In Collins, supra, the insurer issued a draft for only the plaintiff's property damage. The court distinguished Flowers, supra, and found that this alone was not an acknowledgement as to other elements of damages but, instead, was a settlement which acted as a compromise of the property damage only. The court stated: *303 "It is not necessary to address the arguments made by plaintiffs concerning the effect of Flowers because we find that is not controlling in this case. Flowers dealt with the effect of acknowledgement of the prescriptive period and, here, it is apparent that there was not an acknowledgement but, rather, a settlement which acted as a transaction and compromise of the property damages." It appears the scope of the parties' negotiations in Collins was limited to property damage. Furthermore, it was apparent to the Collins that the prescriptive period was running on the other elements of damages as their counsel related by letter to the insurance company that filing of suit would be necessary before the prescriptive date.
The instant case does not involve compromise as in Collins but rather involves an open-ended assurance that all of Mrs. House's medical bills would be promptly paid under the liability provisions of the Goss policy. This admission of liability for all medical payments is inconsistent with anything but an acknowledgement of full coverage under the Goss policy.
In Flowers, supra, a claims adjuster entered into negotiations with the plaintiff relative to a January 11, 1976 auto accident and indicated he did not want to make an appointment with Mrs. Flowers until she was in receipt of her final medical reports. Subsequently, Mr. Flowers, as head and master of the community, accepted payment from the insurer for damage to the family automobile and all but $175.00 of the medical expenses. When Mrs. Flowers received final medical reports, she called the adjuster on January 14, 1977 and was informed that her claim had prescribed. As aforementioned, the Supreme Court held that the adjuster's actions with regard to medical claims did not interrupt the wife's tort claim.
Subsequent to Flowers, the 1979 revision of the matrimonial regimes law removed the head and master concept, and provided for equal management of community property by the spouses. When the revision went into effect on January 1, 1980, wives became proper parties plaintiff to assert community rights.
We find Flowers distinguishable from the present case on two grounds. First, the uncontradicted testimony is that the adjuster offered $5,000.00 plus medicals in settlement of Mrs. House's personal injury claim and this offer was never revoked. Mr. Craven manifested an intention to admit the insurance company's indebtedness to Mrs. House for her personal injuries. Under our law of offer and acceptance, the tender of settlement offer was presumed to remain open for a reasonable period of time. The offer contained no terms limiting the time for its acceptance. Compare: Trainer v. Aycock Welding Co., supra. Secondly, the record shows that the majority of the medical payments made to Mrs. House by the defendant were made after January 1, 1980, when Mrs. House had an equal right to enforce this community claim. Of particular importance is the letter dated June 9, 1980, written by the claims adjuster to the attorney representing Mrs. House. In the letter, the adjuster stated that the medical payments were being made under the liability portion of the Goss policy, and that any other medical bills would be promptly paid as a liability advance payment under the Goss policy. At the very least, this letter clearly acknowledges the insurer's liability for all medical bills incurred by Mrs. House. More importantly, the right acknowledged is one held by Mrs. House, who by then was an equal manager of community property. In Flowers, the Supreme Court's decision is based in part on the fact that the right acknowledged belonged to Mr. Flowers, and such acknowledgement had no effect on a right belonging to another, i.e., Mrs. Flowers' right to claim damages for her personal injuries. In other words, at the time Flowers was decided (prior to the 1979 revision of the matrimonial regimes law), when a married woman suffered injuries as a result of an accident, there arose two distinct claims, i.e., a claim for medical expenses assertable by the husband alone *304 as head and master of the community and a claim for general damages assertable by the wife alone. However, since the effective date of the revision, all of the elements of damages occasioned when a married woman is injured are recoverable by the wife as an equal manager of the community and, thus, it can be said that there is but one claim composed of distinct elements of damages, special and general. We find from our review of the record that the adjuster acknowledged Mrs. House's special and general claims.
We agree with the trial judge that such action by the insurer constituted sufficient acknowledgement to interrupt prescription under the circumstances.
For the reasons assigned hereinabove, the judgment appealed is affirmed at appellant's cost.
AFFIRMED.
DOMENGEAUX, J., concurs and assigns brief reasons.
GUIDRY, J., concurs without comment.
DOMENGEAUX, Judge, concurring.
I respectfully concur in the result reached in the majority opinion. I find that the actions of defendant's adjuster, Mr. Craven, was sufficient to acknowledge liability, and to thereby interrupt prescription.
NOTES
[*] Reversed on other grounds, 387 So.2d 574 (La. 1980). Footnote by this Court.