# Supreme Court of Louisiana

The Opinions handed down on the **9th day of May, 2025** are as follows:

**BY Cole, J.:**

2024-C-00810    *FOUNDATION ELEVATION & REPAIR, LLC VS. KENNETH MILLER AND DOREEN MILLER (Parish of St. Charles)*

REVERSED AND RENDERED. SEE OPINION.

Griffin, J., additionally concurs and assigns reasons.
Guidry, J., concurs.

# SUPREME COURT OF LOUISIANA

## No. 2024-C-00810

## FOUNDATION ELEVATION & REPAIR, LLC

## VS.

## KENNETH MILLER AND DOREEN MILLER

**On Writ of Certiorari to the Court of Appeal, Fifth Circuit,
Parish of St. Charles**

**COLE, Justice.**

This case concerns a dispute between homeowners and contractors arising out of a contract for elevation and renovation work. We granted the writ to determine whether the third party defendant waived abandonment when it filed a general denial answer after the three-year abandonment period set forth in La. C.C.P. art. 561 had elapsed. Finding no waiver, we reverse the court of appeal and render judgment in favor of third-party defendant Direct Source Home Renovation, LLC ("DSHR").

## BACKGROUND

In August 2010, Plaintiffs Kenneth and Doreen Miller entered into a contract with Foundation, Elevation & Repair, LLC ("FER") to perform elevation and foundation work on their home. They also hired Appellant DSHR, which was owned by the same individual as FER. Before completion of the renovation, the Millers' home was allegedly damaged, and they fired FER. In 2012, FER filed a Petition and Rule to Show Cause against the Millers for specific performance to finish the project and for declaratory judgment. The Millers responded with dilatory exceptions of unauthorized use of summary proceedings and nonconformity with the requirements of La. C.C.P. art. 891. They claimed they had been denied a certificate of occupancy and could not live in their home due to the alleged damage.

For almost two years, neither party took any action in the case, until the Millers reset their exceptions for February 2015. In March 2015, the parties entered

1

into a consent judgment in which the Millers' dilatory exception of unauthorized use of a summary proceeding was granted and FER's actions for injunctive and declaratory relief were dismissed with prejudice. Shortly thereafter, FER's principal obtained new counsel and served his enrollment on the Millers' attorneys.

In early 2016, the Millers filed exceptions, an answer, affirmative defenses, and a reconventional demand against FER. They asserted third-party demands against three new defendants, including DSHR. DSHR was alleged to be involved with the same conduct that led to the damaging home elevation as FER. Though there is some dispute about the effectiveness of service, affidavits of service were filed in the record in June 2016. For more than two years and eight months, nothing occurred in the case. Then, on March 11, 2019, the Millers filed for and obtained an entry of judgment of default against FER and DSHR. There was no further action for over three years.

On May 5, 2022, the Millers filed a motion to confirm the default against FER and DSHR, seeking $184,728.63. The trial court denied the motion, citing changes to the procedural requirements for default under Code of Civil Procedure 1702(A)(2), including that the Millers did not notify the enrolled counsel of record of their intent to obtain confirmation of the default judgment. After another delay, on September 23, 2022, the Millers transmitted notice to FER's counsel of record of their intent to confirm default.

Though he was not enrolled as counsel of record for DSHR, and was only enrolled on behalf of FER, on Friday, September 30, 2022, counsel for FER filed a one-page general denial answer to the Millers' petition on behalf of FER and DSHR. It stated, in full:

> Direct Source denies all of the allegations contained in the Third-Party Demand filed by Kenneth and Dorren Miller.
>
> WHEREFORE, the third-party defendant Direct Source Home Renovation, LLC, respectfully prays as follows:

2

1. that this answer be deemed sufficient and good; and
2. for any further legal and/or equitable relief to which may be entitled under the facts and circumstances of this case.

Thereafter, on Tuesday, October 4, 2022, FER and DSHR jointly filed an *ex parte* motion to dismiss the Millers' action on grounds of abandonment pursuant to La. C.C.P. art. 561. They argued the Millers failed to take any step in the prosecution or defense of their case in the trial court for more than three years—from March 12, 2019 to May 4, 2022. The trial court granted the motion and dismissed the Millers' claims against FER and DSHR as abandoned. The trial court thereafter denied the Millers' motion to set aside the order of dismissal.

The court of appeal affirmed in part and reversed in part. *Foundation Elev. & Repair, LLC v. Miller*, 23-0328 (La. App. 5 Cir. 5/22/24), 388 So. 3d 1196. Over two dissents, the court of appeal found that the trial court erred in denying the Millers' motion, holding that "filing of an answer after expiration of the period of inaction is inconsistent with the intent to treat claims as abandoned." 23-0328, p.5, 388 So. 3d at 1200. The court of appeal affirmed the trial court's dismissal of Millers' claims against FER, which did not join in DSHR's answer.

This Court thereafter granted DSHR's writ application. *Foundation Elev. & Repair, LLC v. Miller*, 24-0810 (La. 11/14/24), 395 So. 3d 1163.

## DISCUSSION

In our civilian tradition, Louisiana courts begin every legal analysis "by examining primary sources of law, consisting of the constitution, codes, and statutes; jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary source." *Bergeron v. Richardson*, 2020-1409, p.9 (La. 6/30/21), 320 So. 3d 1109, 1116. Reflecting this principle, Civil Code article 9 provides: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in

3

search of the intent of the legislature." *See also* La. C.C.P. art. 5052 ("When the language of an article is clear and free from ambiguity, its letter is not to be disregarded under the pretext of pursuing its spirit.").

"An action *is **abandoned*** when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." La. C.C.P. art. 561(A)(1) (emphasis added). Article 561(2) provides:

> (2) This provision ***shall be operative without formal order***, but, on ex parte motion of any party or other interested person by affidavit that states that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment.

C.C.P. art. 561(2) (emphasis added). This Court has recognized that abandonment is not a punitive concept but balances the competing policy considerations of every litigant having a day in court and "the legislative purpose that suits, once filed, should not indefinitely linger." *Bd. of Supervisors of La. State Univ. & Agric. & Mech. Col. v. Bickham*, 2023-1364, p.6 (La. 10/25/24), 395 So. 3d 792, 799 (quotation omitted).[1]

The plain language of article 561 direct courts and litigants that abandonment is self-executing. Both subsection (A)(1) and (A)(2) make this clear. Article 561(A)(1) provides that an action "is abandoned" when no step is taken for the three-year period. The subsection provides only one exception—related to succession proceedings in limited enumerated circumstances—that does not apply here. *Id.* Further, and to eliminate all doubt, article 561(A)(2) provides that abandonment "shall be operative without a formal order." In interpreting articles in the Code of Civil Procedure, the word "shall" is mandatory. La. C.C.P. art. 5053. *See Chevron Oil Co. v. Traigle*, 436 So. 2d 530, 533 (La. 1983) (explaining that when the

---

[1] Article 561 provides that an action is abandoned "when the parties fail to take any step in its prosecution or defense" for three years. Because the foundational question before the three-year period elapses is whether an action is a "step" in the prosecution or defense, *any discussion in the jurisprudence of defense "waiver" of abandonment before the three-year period has elapsed is improper*.

4

legislature enacted La. C.C.P. art. 561, it differed from earlier versions of the abandonment law as it "specifically states that its effect is self-operative"). The article is silent on a defendant's waiver of the right to assert abandonment after the three-year period elapses.

In this case, no party took a step in the prosecution or defense from March 12, 2019 through May 4, 2022, a period of over three years. The matter was therefore abandoned.[2] Pursuant to the plain language of article 561, which provides that abandonment is self-executing, that should be the end of the inquiry.

Yet over the last several decades, jurisprudence of this Court and the courts of appeal have attached a broad jurisprudentially created waiver doctrine to cases involving actions taken after the three-year period has passed, finding that a defendant's post-abandonment actions can serve to waive his right to plead abandonment. This doctrine has its roots in *Chevron,* in which we explained that "abandonment is a form of liberative prescription." 436 So. 2d at 535 n.4. Two principles of liberative prescription are relevant here: acknowledgment and renunciation. La. C.C. arts. 3447, 3449, 3450. Acknowledgment and renunciation differ in both substance and legal effect. *Lima v. Schmidt*, 595 So. 2d 624, 631-632 (La. 1992), *superseded on other grounds*. **Acknowledgment** is the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course; **renunciation** is the term designating the decision to abandon rights derived from a prescriptive period that has accrued. *Id.* at 631 (citing La. C.C. art. 3449, cmt. (c)). Renunciation of prescription must be "clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run," whereas "a lesser showing is required to establish an acknowledgement." *Id.* (citation omitted).

---

[2] In their motion to set aside, the Millers argued that the matter was never abandoned at all due to certain purported "steps" they took in the trial court. They do not assert those arguments in this Court.

Turning back to the jurisprudence, in *Chevron*, the Court considered a case where a defendant joined in a motion for summary judgment after the abandonment period elapsed. After analyzing the language of article 561, the Court concluded that "submission of an abandoned case for [a] decision effects a waiver of the right to have the suit dismissed because of want of prosecution under article 561 of the Code of Civil Procedure." 436 So. 2d at 535. The Court explained "the concept of post-abandonment waiver is ***similar to renunciation***, which may either be express or tacit," and the submission of a case for decision was akin to renunciation of abandonment. *Id.*, at 535 n.4 (emphasis added). Notably, *Chevron* was limited in its application to cases submitted for decision. The Court explained:

> The concept of abandonment is not punitive in nature. The notion is one which is designed to discourage vexatious, harassing or frivolous suits by preventing the plaintiff from allowing such suits to linger indefinitely. Moreover, the threat of abandonment serves to hasten all suits to judgment. Once a case is submitted, its disposition is out of the hands of the parties, and nothing is gained by penalizing them for what they have failed to do before that point. . . . Nothing is served by allowing the defendant to have a case submitted for judgment declared abandoned. If our goal is to encourage the hasty resolution of disputes, it would be anomalous for us to hold that this goal is somehow advanced by the dismissal of suits that are ready for resolution. Had the legislature intended such a paradox under article 561, it could have so explicitly stated.

*Chevron*, 436 So. 3d at 535.

Despite the caution the Court urged in *Chevron*, post-abandonment waiver jurisprudence continued to expand. The problem arose from this Court's dicta discussing waiver by "acknowledgment" in *Clark v. State Farm Mutual Automobile Insurance Co.*, 2000-3010 (La. 5/15/01), 785 So. 2d 779. Of note, the factual issue presented in *Clark* related to the "step" taken by the defense that occurred ***before*** abandonment had run. The discussion of post-abandonment waiver by acknowledgement in *Clark* was entirely dicta.[3]

---

[3] *Clark* considered whether an unconditional tender made by an uninsured/underinsured motorist carrier before the three-year period elapsed constituted a waiver of the claim that a suit was abandoned. We repeated the *Clark* statement of waiver as acknowledgement in several cases, but

6

In *Clark*, the Court explained that "[t]he historical and theoretical nature of abandonment as a species of prescription renders it appropriate to consider prescriptive principles" in analyzing abandonment questions. *Id.,* p. 19, 785 So. 2d at 791. But rather than view any post-abandonment action by defendant to require ***renunciation*** to effectuate a waiver, as articulated in *Chevron*, the Court—without explanation or citation—stated that post-abandonment waiver was a concept of "waiver as an acknowledgement."[4] *Id. Clark*'s broad language permitted courts to find waiver by acknowledgement after the three-year period without distinguishing between actions taken before and after the matter had been abandoned by operation of law. 2000-3010, p.15, 785 So. 2d at 789 ("The timing of a defendant's conduct cannot logically be construed as altering its character insofar as whether it is sufficient to constitute a waiver of the right to plead abandonment. Logic dictates that the same standard for determining if action of the defendant results in waiver and thereby an interruption of abandonment should apply regardless of whether the conduct occurred before or after the abandonment period elapsed.").

Considering the silence in article 561 on post-abandonment actions, we hold that the proper analysis of a defendant's post-abandonment action is through principles of renunciation, not acknowledgement. Post-abandonment waiver is limited to a situation where a defendant takes an action which renunciates the defense of abandonment by clearly or directly demonstrating his preference and intent to proceed—such as submitting the case for decision to obtain a judicial resolution on the merits. *See Chevron,* 436 So. 2d at 533.[5] *See Slaughter v. Arco*

---

[4] The dissent in *Clark* noted that the majority was "confus[ing] the issue by engaging in an expansive discussion of the concepts of waiver and acknowledgement," and that resorting to the principles of waiver by acknowledgement "evade[s] the express provisions of the law." 2000-3010, Dissent p.3, 785 So. 2d at 794 (Victory, J., dissenting).

[5] The act of waiving abandonment by contract—such as joint stays of proceedings—may be seen as a form of renunciation. *See Margaret Fisk Munro v. Brit. Am. Oil Producing Co.,* 2016-1057,

again, none of these had a similar post-abandonment procedural posture. *See, e.g., Bickham,* 2023-1364, p.12, 395 So. 2d at 802 (concerning expropriation of real property and a joint motion to continue trial with a request to reset filed before the expiration of the three-year period).

*Chem. Co.*, 05-657 (La. App. 4 Cir. 4/26/06), 931 So. 2d 387 ("[I]f we were to treat abandonment as a form of prescription, then we must consider 'renunciation' to be the truly correlative analogous concept."). Mere acknowledgement of the existence of the proceedings is insufficient. Under the facts of this case, DSHR's short general-denial answer, only filed after receiving notice of a motion to confirm a default judgment and followed days later by a motion to dismiss as abandoned, cannot be construed as renunciation of abandonment. The filing did not clearly or directly demonstrate DSHR's preference and intent to proceed with the litigation. The court of appeal erred in reversing the trial court's dismissal of the claims as abandoned.[6]

Finally, DSHR requested that this Court "clarify" the standard of review for pre-and post-abandonment actions. Because under any standard of review we find the court of appeal erred in this case, we do not need to reach this issue.

## CONCLUSION

For the foregoing reasons, the court of appeal is reversed and the judgment of the trial court in favor of third-party defendant Direct Source Home Renovation is reinstated.

**REVERSED AND RENDERED**

---

pp.9-10 (La. App. 1 Cir. 11/8/17), 235 So. 3d 1162, 1169 ("The bankruptcy proceedings filed by Black Elk combined with its agreement to defend and indemnify its non-bankrupt Codefendants provided justification for Plaintiffs' failure to take steps in the prosecution of the case against the nonbankrupt Codefendants."); *Moise v. Baton Rouge Gen. Med. Ctr.*, 2022-0623 (La. App. 1 Cir. 4/20/23), 367 So. 3d 108, 115, *writ denied*, 2023-00718 (La. 9/26/23), 370 So. 3d 475 ("[T]he agreement between the attorneys to stay the first filed lawsuit was a defense waiver of the right to assert abandonment.").

[6] The dicta from *Clark* has been cited by multiple appellate courts adopting post-abandonment waiver by acknowledgement doctrine. *See*, *e.g.*, *Bell v. Kreider*, 04-594 (La. App. 5 Cir. 11/30/04), 890 So. 2d 648; *Tessier v. Pratt*, 2008-1268 (La. App. 1 Cir. 2/13/09), 7 So. 3d 768; *Gordon v. Gordon*, 2016-0008 (La. App. 4 Cir. 6/8/16), 195 So. 3d 687, 689, *writ denied*, 2016-1282 (La. 10/28/16), 208 So. 3d 886; *Burgess, Inc. v. Par. of St. Tammany*, 2017-0153 (La. App. 1 Cir. 10/25/17), 233 So. 3d 58, 69, *writ denied*, 2017-2179 (La. 2/23/18), 237 So. 3d 515; *Gilbert v. Metro. Life Ins. Co.*, 2020-0850 (La. App. 1 Cir. 2/22/21), 321 So. 3d 1023.

To the extent that these cases incorporate *Clark*'s waiver by acknowledgement principles and do not consider renunciation post-abandonment, they are not supported by the law and should not be relied upon. *See Bergeron v. Richardson*, 2020-1409, p.9 (La. 6/30/21), 320 So. 3d 1109, 1116 ("[J]urisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary source.").

## SUPREME COURT OF LOUISIANA

## No. 2024-C-00810

## FOUNDATION ELEVATION & REPAIR, LLC

## VS.

## KENNETH MILLER AND DOREEN MILLER

*On Writ of Certiorari to the Court of Appeal, Fifth Circuit, Parish of St. Charles*

**GRIFFIN, J., additionally concurs and assigns reasons.**

I agree with the majority's holding that a defendant's post-abandonment action is properly analyzed through principles of renunciation. I write separately to express my view that, under this standard, the result reached by this Court in *Pinnacle Construction Group, L.L.C. v. Devere Swepco JV, L.L.C.*, 24-0406 (La. 2/6/25), 400 So.3d 878, is the same. A defendant's post-abandonment action of filing a motion to continue a hearing, with an accompanying order requesting a new date be set, clearly demonstrates a preference and intent to proceed thereby renouncing the defense of abandonment.